May it please the court, opposing counsel, my name is Robin Hammond and I am here on behalf of Mr. William Semsak. We raise this appeal based upon violations of the law in the district court's assignment of Mr. Semsak's sentence. The first violation and the first issue I will discuss today is the criminal history calculation. This offense occurred on July 25, 2001. In order for any prior conviction for which the sentence was given in excess of 13 months to be assigned toward Mr. Semsak's criminal history score, the 15-year cutoff date according to 4A1.2E1 would have to have included offenses for which the sentences were completed prior to July 25, 1986. Now what happened in this case is there were actually three prior convictions. We understand that. I guess I'm having trouble in plain language of it figuring out how Note 11 applies to this situation. Well, Your Honor, it's our position that Note 11 applies because Note 11 was designed to apply when complex revocation cases increased, had the potential of increasing criminal history points in the criminal history score calculation. And that's exactly what happened in this case. Were it not for the single revocation, parole revocation, which expired on August 10, 1986, none of these three prior convictions would have counted toward Mr. Semsak's criminal history score. And for the purposes of this appeal, there are only two of those prior convictions were counted because the district court didn't count one, the third. Because both convictions were counted as a result of the singular parole violation, Note 11 comes into play because there was an increase in the criminal history score as a result of one singular violation. In other words, three points were assigned for each of two convictions that would not have applied or been assigned at all were it not for that singular revocation. And application Note 11 specifically says that where a revocation applies to multiple sentences and such sentences are counted separately under 4A1.282, add the term of imprisonment imposed upon revocation to the sentence that will result in the greatest increase in criminal history points. It seems to me that Note 11 really applies to add points in the case where you're looking at length of the sentence, not the recency. So it's when you have a question of whether it meets the criteria for the length of a sentence that will be counted. I can't understand how it applies to recency. Well, Your Honor, 4A1.2K, 4A1.2K2B specifically refers to the fact that release from parole revocations may affect a time period under which an offense may be counted under 4A1.2E1. Under that section, they bring in this time element under Note 11. What Note 11 does is it expands upon what that provision under 4A1.2K introduces into the guideline. So what Note 11 does is it says, look, if there's one revocation, and as a result of that one revocation, you're looking at an increase in criminal history points that will be assigned to more than one prior conviction. As a result of a singular revocation, then you have to assign it, and you have to add those points only to one conviction. Well, it says you add a term of imprisonment, though, that's what it says. Well, that's true. It covers both. It's our position that it covers both. I think we understand your point on that. You might want to address, because it may be a somewhat unusual case, the recklessness issue. Thank you, Your Honor. The second issue that we have raised in our brief is the recklessness issue. Now, it's our position that the district court assigned a four-point upward departure based upon the facts of this case, specifically because of the district court's determination that there was what he termed extreme recklessness. Now, it's our position that because Mr. Zimczak's base offense level was 14 as opposed to 10 under the involuntary manslaughter guideline, 2A1.4, that that additional four-point enhancement covers and adequately contemplates the degree of recklessness that occurred in this case. Application note one to that section defines recklessness as a risk that caused a gross deviation from the standard of care a reasonable person would exercise in such a situation. That's what occurred in this case. There was a gross deviation from the standard of care that a reasonable person should have exercised in the situation that occurred in this tragic case. What did happen here and what our position is that should not have happened is that an additional upward departure under 5K2.14 should not have been assigned because that degree of recklessness, that reckless conduct in driving a large truck and causing that accident was already contemplated by the involuntary manslaughter guideline. If they were driving a small compact car and going crazy, weaving in and out of traffic, pushing people off the road, would it make any difference? Isn't the danger of this 18-wheeler a lot different than driving a small car and weaving in and out of traffic and pushing people in ditches and so forth? Well, Your Honor, under application note one, the way that recklessness is defined, it looks specifically to the standard of care a reasonable person would exercise in whatever situation is presented by any particular case. Now, in this particular case, there's no doubt that there was reckless disregard, that Mr. Simsack did not exercise the standard of care that a reasonable person would have and should have in that same situation. Just the same as if a person driving a car under the influence of alcohol would not be exercising an adequate standard of care such that a reasonable person would exercise in a similar situation. And that is where the guideline already contemplates this behavior because the guideline says as long as there was a gross deviation in the standard of care, which is exactly what happened in this case, that conduct is contemplated by the guideline. And so this application, 5K2.14, essentially results in double counting of the single event that occurred in this case. And, Your Honor, I see that I have about two and a half minutes remaining. I would reserve that for rebuttal. That's fine. Thank you. Thank you. Good morning, ladies and gentlemen, counsel. My name is Ed Laws. I'm the Assistant U.S. Attorney in Montana, and I handle this case in the district court. I think that this court has, from the questions, has a good grasp of the criminal history issue in this case. This application, note 11, we believe applies only to those situations where you have one criminal history point or two criminal history points that would count had it not been for the revocation. And the most criminal history points that you could ever have would be three for any violation. In this case, this defendant had three points going in, and he had three points going out. The only thing that resulted from his revocation is that he was in prison on these cases within the 15-year window that is set forth in 4A1.1E, and that's the reason the cases count. When he caused the acts that caused the revocation of his probation, I guess what probation was that? It's my recollection, Your Honor, that he probably was paroled. No, whatever. That he had frozen time, and he was on parole. In any case, he was under some sort of controlled release, and when he breached that, he was then put back in, not only for the original term, but also for another term because of the breach. Is that right? Yes. And that's what kicks it in, because he's now within 15 years of being in prison, right? And that's, Your Honor, we believe it's a hard-line rule, 15 years. It doesn't say almost 15 years. I understand the rule. I'm just saying that the analysis is, and my understanding is correct, is that because he revoked this conditional release, not only went back in for a time he hadn't served when he got early release, but he also served more time for breaching the terms of his release. That's correct, and his release was in 15 years. I would like to address, if the Court has no other questions on the criminal history issue, I would like to address for a moment the issues that are raised on the upward departure. The Court here found specifically that this was not a case that fell within the heartland of reckless driving cases, and certainly the facts in this case, after handling 25 or 30 of these cases over the years, are the worst I've ever seen. This man was driving drunk down the road with an 80,000-pound truck. He went completely to the other side of the highway and ran over the victim in this case, who was rolled up in the dashboard of his car, and the car was so mangled that the highway patrolman could not tell what it was when he got there. The victim had no place to go. He was almost into the ditch when he was hit. That is a terrible set of facts. However, added to this is the fact that there were people trying to stop this man, and there was traffic coming toward him during all this period of time that he was running off the road, and that's what the witnesses observed. The Court, in taking the departure here, chose one of those areas that is encouraged for departures, that is the public welfare, and took into account the size of the vehicle, the fact that this man was drunk, had 180-proof alcohol in the cab with him, with a bottle, and that he was running other people off the road, and this went on, from what witnesses observed, for a period of at least nine miles. I mean, these are horrible facts, I agree. But my question is exactly how the public welfare safety fits in with recklessness, because the application note on recklessness says basically virtually every involuntary manslaughter, including where you're drunk, where you have drugs or alcohol, falls under that category, and so every time you've got a drunk person on the road, whether it's in a smart car or an 18-wheeler, you have the public at risk, so I'm not quite sure how these fit. The public is certainly more at risk with an 80,000-pound vehicle than they are with a compact car. That's true, but then I just wonder where does recklessness leave off, because conduct is still reckless. Well, Your Honor, this Court is held in cases where recklessness can become so gross that it becomes intentional conduct, and that has been held in car accident cases where there was injury and not death, because it's a general intent crime with a serious bodily injury. The facts here are such that it rises, I believe, to that level. Had Marcus Sookjus been injured rather than killed under the facts of this case, I think he would certainly sustain a conviction for assault resulting in serious bodily injury, and the reason that the Court didn't stay just with the facts involving this one car and this one accident was that there were other people on the road, and that may or may not be the case with every drug that runs over somebody, but these were facts that the Court was presented with. This is a narrow two-lane road. There were other people on the road. This Court is held in an unpublished opinion that I know of. If it's unpublished, you may not cite it or discuss it with me. Okay, Your Honor, I'm sorry about that. The fact that I did the case brings it to mind. You can keep it just in your mind. I think that the case out of the Tenth Circuit, the white skunk case, certainly does deal with the same sort of factors, and the Court there found excessive recklessness and had no trouble departing on that case. The judge seemed to, you know, he laid out his reasons, obviously, going the wrong way, ignoring the warnings and that sort of thing. One question I had is whether his reasons for departing seemed to be pretty well laid out. Do you think he laid out a rationale for the degree of departure, and if so, where do we look for that? Your Honor, the degree of departure that the Court took on this was a degree of departure that the government had agreed on with the defense counsel. In the plea agreement, as a matter of the government, agreed that we would not request a upper departure of more than four levels. That's what was requested and that's what the Court gave. I have to assume that the district judge found that that was reasonable for a departure. Any other questions? We would ask that this case be affirmed, Your Honor. Thank you, Your Honors. With respect to United States v. White Skunk, I think it should be noted that in that case, the district court held that an upward departure was warranted under 5K2.14 because Mrs. White Skunk's EAC blood alcohol level was two times the legal limit, because she had a prior DUI conviction, and because there were multiple opportunities for her to correct her behavior prior to committing that particular crime on that particular night. But the Tenth Circuit, while it held that, in its opinion, excessive recklessness might allow for an upward departure under 5K2.14, it held that those reasons were not enough for an upward departure in that particular case. And so what we have here is also a drunk driving case. It's also a DUI case. A drunk driver generally doesn't impact only one person. If there's a crash, as there was in this case, generally there are other incidents leading up to that crash. This person, Mr. Simsack, was moving all over the road. There were people following him. There were people trying to stop him. This does not bring this case outside of the heartland of similar drunk driving cases. It's simply not enough, and it's covered by recklessness. It's reckless behavior. It goes beyond the standard of care that a reasonable person would exercise. The other thing that should be brought up, and which Judge McKeown did bring up, is the fact that the degree of departure was not explained by the district court. It was not explained, and I think this is a particular problem, particularly when given the fact that the district court based its decision upon extreme recklessness, which, again, is already covered by the guideline. And so not only do we have an upward departure based upon something that had already been taken into account by the applicable guideline, we also have an upward departure, the degree of which was not explained or described or justified by the district court. And if there are no further questions, I would ask that this case be submitted. Thank you. The case of the United States v. Semtec is submitted.
judges: B Fletcher, Brunetti, McKeown